IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
)
vs. )          Criminal No. 10-80
)          See Civil Action No. 12-1412
WALTER VANCE HARRIS, )
)
Defendant/petitioner. )

O R D E R

AND NOW, this 29th day of January, 2013, upon

consideration of Petitioner's pro se "Motion under 28 U.S.C. §

2255 to Vacate, Set Aside, or Correct Sentence by a Person in

Federal Custody" (document No. 59), and memorandum in support

thereof (document No. 60), filed in the above captioned matter

on October 1, 2012, and in further consideration of Petitioner's

pro se responses to the Court's October 2, 2012 Show Cause Order

(document Nos. 64 and 65), filed on November 9 and 14, 2012, and

his supplement to his Section 2255 Motion (document No. 67),

filed on January 10, 2013,[1]

IT IS HEREBY ORDERED that Petitioner's motion is

DISMISSED.

---

[1]     Although Petitioner labels his supplement as his "Re-
sentencing Memorandum and Challenge to PSR Report," he appears
to have jumped the gun.  The Court has not vacated his sentence,
and he is not, as he claims, appearing before the Court for re-
sentencing.  Accordingly, the Court is construing his memorandum
as a supplement to his Section 2255 motion.

## I.      **Background**

On September 30, 2010, Petitioner pled guilty to Count
One of the indictment, charging him with possession with intent
to distribute 500 grams or more of cocaine, in violation of 21
U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii).  In connection with
his plea, Petitioner and the Government entered into a written
plea agreement, in which the Government agreed not to file an
information, pursuant to 21 U.S.C. § 851, stating prior
convictions as a basis for increased punishment.  The agreement
also contained a stipulation as to the type and quantity of
controlled substance attributable to Petitioner for purposes of
USSG § 2D1.1, specifically 2,206.5 grams of cocaine.  The
agreement further included a waiver of certain appellate rights
as well as a provision that Petitioner "further waives the right
to file a motion to vacate sentence, under 28 U.S.C. § 2255,
attacking his conviction or sentence, and the right to file any
other collateral proceeding attacking his conviction or
sentence."  The agreement further stated that it

> sets forth the full and complete terms and
> conditions of the agreement between [Petitioner]
> and the [Government], and there are no other
> agreements, promises, terms or conditions,
> express or implied.

Petitioner signed the agreement and agreed at the plea hearing
that he had agreed to the terms set forth in the agreement,

2

which both the Government and the Court reviewed for him at that hearing. The Court accepted Petitioner's plea.

On December 16, 2010, the final Presentence Investigation Report ("PIR") was filed, in which the probation officer concluded that Petitioner qualified as a career offender pursuant to USSG § 4B1.1 because of his prior convictions. Petitioner's counsel subsequently filed a sentencing memorandum arguing that Petitioner should not be sentenced as a career offender under 18 U.S.C. § 3553(a). Counsel also attached a memorandum prepared by Petitioner himself raising various additional arguments.

On January 20, 2011, the Court rejected Petitioner's argument that a variance was warranted and sentenced Petitioner to 188 months' imprisonment and 5 years' supervised release. Judgment was entered on the next day. Although Petitioner filed a notice of appeal on January 28, 2011, the Third Circuit Court of Appeals summarily dismissed the appeal based on Petitioner's waiver of his appellate rights. (Doc. No. 58). Petitioner subsequently filed the present motion pursuant to 28 U.S.C. § 2255. Because the Court was aware of the waiver of the right to file a Section 2255 motion contained in the plea agreement entered into by Petitioner, it ordered Petitioner to show cause why his motion should not be dismissed on the basis of this

3

waiver. Petitioner filed two responses setting forth various reasons why the Court should not enforce the waiver in addition to the reasons set forth in his Section 2255 motion and memorandum in support thereof. He also filed a supplement to his motion, in which he claims that he is appearing for re-sentencing and requests a downward departure based on the overstatement of his criminal history. While this supplement does not directly relate to the issue of the waiver of his right to file a collateral attack, the Court will consider the arguments made therein to the extent relevant to the waiver issue.

## II.      **Discussion**

Section 2255 permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255(a). However, a criminal defendant may waive his right to file a motion under Section 2255 or to otherwise seek collateral relief. Such a waiver is valid if entered into "knowingly and voluntarily"

4

unless it would work a "miscarriage of justice." United States

v. Khattak, 273 F.3d 557, 558 (3d Cir. 2001); United States v.

Mabry, 536 F.3d 231, 237-38 (3d Cir. 2008). A district court

has an affirmative duty to conduct an evaluation of the knowing

and voluntary nature of the waiver and to assure itself that its

enforcement works no miscarriage of justice. See Mabry, 536

F.3d at 237-38.

Petitioner raises several arguments as to why the

waivers contained in the plea agreement, particularly the waiver

of his right to collaterally attack his sentence, are not

knowing or voluntary.[2] First, he argues that the Government

breached its agreement not to file a Section 851 information by

arguing that his prior convictions rendered him a career

offender. He claims that the Government's breach of the

agreement invalidates the agreement and prevents the enforcement

of the waivers. He further argues that, had he realized that

the Government would have breached the agreement, he never would

have entered into the plea agreement.

This argument has no merit. Petitioner misconstrues

the nature of the Government's agreement in regard to raising

his prior convictions. The plea agreement provides merely that

---

[2]     The Court notes that pro se pleadings are held to less
stringent standards than formal pleadings drafted by lawyers.
See Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v.
Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999).

the Government will not file an information setting forth prior
convictions for the purpose of enhancing the statutory penalties
in this case pursuant to 21 U.S.C. §§ 841 and 851. It in no way
states or implies that Petitioner's prior convictions could not
be considered in sentencing at all. The agreement was specific
in nature and applied only to the enhancement of the statutory
sentencing range, not the impact of prior convictions on
Petitioner's recommended guideline range. The Government, in
fact, did not file a Section 851 information and, therefore, did
not breach the plea agreement. Had the Government filed an 851
information, Petitioner would have been subject to a mandatory
minimum sentence of 10 years rather than 5 years. Although, as
it turned out, Petitioner was sentenced to more than 10 years'
imprisonment anyway, he still benefitted from the agreement in
that he was at least free to argue for a sentence of
imprisonment of less than 10 years, which he in fact did at
sentencing.

Petitioner's next argument -- that he did not enter
into the plea agreement knowingly and voluntarily because he was
never advised by counsel or by the Court that he might be
subject to the career offender provisions of the Sentencing
Guidelines -- fares no better. First, this argument does not
raise any allegations that would establish that the waiver of

his right to file a collateral attack itself was anything other than knowing or voluntary. See United States v. Akbar, 181 Fed. Appx. 283, 286-87 (3d Cir. 2006); United States v. Clark, 177 Fed. Appx. 228, 231 (3d Cir. 2006); United States v. Watkins, 2011 WL 2261059 (W.D. Pa. June 8, 2011); United States v. Fagan, 2004 WL 2577553, at *4 n.5 (E.D. Pa. Oct. 4, 2004). He does not claim that he did not understand the nature of the waivers contained in the plea agreement or that he was coerced or threatened in any way into agreeing to such waivers.[3]

Indeed, the Court questioned Petitioner extensively regarding the waiver of his right to file a collateral attack as to his plea and sentence:

> Do you understand that ordinarily you or the Government may have the right to appeal any sentence the court imposes; however, the Court notes that in paragraph A6 of the plea agreement, you and the Government agreed that you would waive, that is, give up your right to take a direct appeal from your conviction or sentence subject to the following exceptions:
>
> First, if the United States appeals from the sentence, you may take a direct appeal from the sentence. Do you understand that?
>
> Second, You may also take a direct appeal from the sentence only on the following grounds:

---

[3] Petitioner does suggest that he would not have entered into the waivers themselves had he known that the career offender provisions may apply. The Court will address this below.

> First, the sentence exceeds the
> applicable statutory limits set forth
> in the United States Code. Do you
> understand that?; or
>
> Second, the sentence unreasonably
> exceeds the guideline range determined
> by the Court under the Sentencing
> Guidelines. Do you understand that?
>
> To repeat, by these provisions of the
> plea agreement, you are giving up the right
> to appeal both the validity of your plea of
> guilty and the legality of your sentence.
> Do you understand that?
>
> Further, you have also waived the right
> to file a motion to vacate sentence under
> Title 28, United States Code, Section 2255,
> and the right to file any other collateral
> proceeding attacking your conviction or
> sentence. Do you understand that?

Petitioner answered all of these questions in the affirmative.

The Court therefore continued:

> The waivers you have entered into are
> generally enforceable if entered into
> knowingly and voluntarily unless they work a
> miscarriage of justice. Has anyone made a
> threat to you or anyone else that has forced
> you to waive these rights?
>
> Has anyone made any promise to you other
> than the promises made in the plea agreement
> that has induced you to waive these rights?

When Petitioner responded in the negative, the Court found the

waivers to be knowing and voluntary. He does not, even now,

claim that he had any misunderstanding as to the nature of the waivers.

The closest Petitioner comes to challenging his knowledge in regard to the waivers themselves is in claiming that he would not have waived his appellate and collateral review rights had he known that he potentially could be sentenced as a career offender. However, he does indicate that he did understand, prior to entering into the waivers, that the waivers would prevent him from challenging a finding that he was a career offender under Section 4B1.1. The best he can do is to argue that enforcing waivers into which he entered without all of the facts would work a miscarriage of justice.

However, this argument fails as well, as his counsel's failure to advise him of the possible application of the career offender guidelines does not render enforcement of the waivers a miscarriage of justice. As the Third Circuit has explained, in determining whether there would be a miscarriage of justice, the Court must consider factors such as the clarity of the alleged error, its gravity, its character, the impact of the error on Petitioner, the impact of correcting the error on the Government, and the extent to which Petitioner acquiesced in the result. See Khattak, 273 F.3d at 563 (citing United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)). After engaging in

9

its own independent review of the record and applying the factors set forth above, the Court finds that no miscarriage of justice will occur by enforcing the collateral waiver.

It is helpful first to analyze whether Petitioner can even establish ineffective assistance of counsel in regard to the plea agreement and the waivers contained therein.[4]  In the context of a challenge to a guilty plea based on ineffective assistance of counsel, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).  Defense counsel's "misrepresentations" or "erroneous predictions" concerning applicable guideline ranges or probable sentences do not amount to prejudice.  United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) (collecting cases).  See also United States v. Jones, 336 F.2d 245, 254 (3d Cir. 2003) (defendant unable to establish prejudice when sentenced to 130 months after alleged promise of 57-71 months because district court's "lengthy and extensive" Rule 11 colloquy informed defendant of maximum sentence, defendant confirmed there was no promise or assurance of any kind, and court explained that defendant would

---

[4]     Although a miscarriage of justice can occur where plea proceedings were tainted by ineffective assistance of counsel, merely raising such a claim does not render a waiver unenforceable.  See Akbar, 181 Fed. Appx. at 286-87.

not be permitted to withdraw his plea if sentence was more
severe than expected); United States v. Mustafa, 238 F.3d 485,
492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that []
former counsel may have made regarding sentencing calculations
were dispelled when [defendant] was informed in open court that
there were no guarantees as to sentence, and that the court
could sentence him to the maximum.").

          This case law illustrates the numerous problems with
Petitioner's arguments.  First, although he argues that he would
not have entered into the waivers knowing of the potential
application of Section 4B1.1, he does not establish that a plea
agreement without these waivers was even an option.  Moreover,
while he makes vague statements to the effect that he would have
proceeded to trial had he known that he could be sentenced as a
career offender, and that he could have raised Fourth and Fifth
Amendment arguments, he appears primarily to seek re-sentencing,
not the vacation of his conviction.  Indeed, he does not specify
what his Fourth and Fifth Amendment arguments were or what type
of defense he believes he could have raised at trial,
particularly in light of the fact that the case arose from a
controlled delivery of narcotics to him.  In sum, it is not
clear that Petitioner actually would have or could have made a

different decision even if his counsel had advised him of the
possibility of a career offender sentence.

Regardless, Petitioner's argument completely ignores
the colloquy conducted by this Court pursuant to Federal Rule of
Criminal Procedure 11. In accepting Petitioner's plea, the
Court conducted a lengthy and extensive Rule 11 colloquy, during
which Petitioner was informed that the maximum penalty to Count
One was 40 years' imprisonment. The Court further informed him
that the Sentencing Guidelines were merely advisory, that the
Court may sentence him outside of the recommended guideline
range but within the applicable statutory minimum and/or maximum
penalties, and that the Court could not determine the advisory
guideline sentencing range until after the PIR had been
prepared. The Court further asked Petitioner whether he
understood that if the sentence he received was greater than
expected that he would have no right to withdraw his plea, and
Petitioner indicated that he did. Petitioner admitted that
there were no promises or predictions about what his actual
sentence would be.

Once a court has engaged in the kind of elaborate
colloquy that this Court did here, a defendant's plea must be
"accorded a great measure of finality." Blackledge v. Allison,
431 U.S. 63, 71 (1977). Representations and admissions made

under oath at a plea hearing are entitled to great deference, and Petitioner faces a great burden in overcoming the strong presumption of the veracity of any such representations and admissions. See Blackledge, 431 U.S. at 73-74; Morris v. United States, 2008 WL 1740679, at *5 (D. Del. Apr. 16, 2008). He has failed to do so here. Petitioner stated that he was aware that he could face a sentence of up to 40 years' imprisonment, that the Court could not yet determine the guideline recommendation, that the recommendation was merely advisory, that the Court may sentence him outside of the recommended guideline range, and that he could not withdraw his plea if the sentence was greater than expected. He admitted that no one had made any predictions or promises as to what his actual sentence would be. He cannot now claim that his decision to plead guilty or to enter into the waivers was based on an inaccurate view of the potential sentence he faced. Accordingly, any error by counsel in failing to advise Petitioner that he was subject to the provisions of Section 4B1.1, was cured by the Court's Rule 11 colloquy.

Accordingly, in deciding to plead guilty, Petitioner was aware that he could be sentenced to far more than the 188 months' imprisonment that he ultimately received. The court also asked Petitioner:

13

> Has anyone made a threat to you or to anyone else that has forced you to plead guilty?
>
> Has anyone made any promise other than the promises made in the plea agreement that induced you to plead guilty?
>
> Has anyone made any prediction or promise to you as to what your actual sentence will be other than what you have been told as a minimum and maximum sentence?
>
> Has anything I have said here today, other than what I have told you about the minimum and maximum sentence, suggested to you what your actual sentence will be?
>
> Have you been instructed by the Government attorney, your attorney, or anyone else to respond untruthfully to any question concerning a promised sentence?

Petitioner responded in the negative to all of these questions. Whatever error his counsel may have made in regard to the guideline recommendations was cured prior to Petitioner's decision to plead guilty. Despite his vague, and somewhat contradictory statements that he would have proceeded to trial had he known that he could receive the sentence he ultimately received, he was, in fact, advised of this contingency prior to his decision to waive his right to a trial. This precludes a finding that Petitioner was prejudiced, much less that a miscarriage of justice would result from enforcing the collateral challenge waiver.

As noted, Petitioner seems primarily interested not in a trial, but in being re-sentenced. However, even if Petitioner were to be re-sentenced, and were he able to attack collaterally the application of the career offender guidelines, he could not show prejudice, much less a miscarriage of justice, because his position has no merit. Indeed, Petitioner argued extensively, both through counsel and personally, at his sentencing hearing that he should not be sentenced under the career offender provisions. The Court considered those arguments and rejected them for the reasons explained at length during the sentencing colloquy. To the extent that Petitioner wishes to raise the same arguments, he cannot establish that the Court's ruling would be any different.

Perhaps realizing this, Petitioner does raise a couple of new arguments not raised at his hearing. He argues that one of his prior convictions that served as a predicate for his designation as a career offender, his conviction for burglary and robbery at CR-9183-1997 in the Allegheny County Court of Common Pleas, is "about to be vacated." He refers the Court to "Anticipatory Attachment One," which apparently will be a copy of an order of the Court of Common Pleas vacating his conviction in that case. Petitioner argues that since one of the predicate felonies underlying his designation as a career offender will no

15

longer be valid, the Court should not enforce the waiver so as to give him a forum to challenge the continuing validity of his sentence, and that enforcing the waiver would work a miscarriage of justice.

"[A] defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated." Johnson v. United States, 544 U.S. 295, 303 (2005). See also Stewart v. United States, 646 F.3d 856, 863-64 (11th Cir. 2011). However, with certain limited exceptions, a defendant may not attack the validity of a sentence imposed by the federal court based on an allegedly faulty state court conviction pursuant to Section 2255 until after the state conviction has been vacated. See Daniels v. United States, 532 U.S. 374 (2001); Stewart, 646 F.3d at 864. In other words, a Section 2255 motion generally is not the proper vehicle to attack collaterally the validity of a conviction later used to enhance a federal sentence. See Daniels, 532 U.S. at 380-81. The problem with Petitioner's argument is that, while it appears that he has sought to vacate his conviction at CR-9183-1997, it has not yet, in fact, been vacated.

Petitioner seems to understand this, and asks the Court to "stay and abey" this case until he prevails on this claim in state court. However, the Court is not ruling on the

merits of his Section 2255 motion, but rather, as to whether the collateral review waiver into which Petitioner entered should be enforced. Because Petitioner will likely be able to seek relief in regard to his federal sentence if, in fact, he does succeed in having his prior predicate conviction vacated, there is no miscarriage of justice in enforcing the waiver as to the present motion, which was filed prior to any entitlement to relief on the basis of a vacated prior conviction.[5]

Petitioner further argues that another of his convictions forming the basis of his career offender designation, his conviction for delivery of crack cocaine, no longer constitutes a predicate felony pursuant to USSG §§ 4B1.1 and 4B1.2 based on the holding of the United States Supreme Court in Carachuri-Rosendo v. Holder, 130 S. Ct. 2577 (2010), which he claims has been made retroactive to cases on collateral review by the Fourth Circuit Court of Appeals in United States v. Simmons, 649 F.3d 237 (4th Cir. 2011). However, his argument fails for many reasons.

First, Carachuri-Rosendo has no application to the facts of this case. That case dealt with the issue of under

---

[5]     The Court notes that, in the supplement to his Section 2255 motion, Petitioner suggests that the conviction at issue has been vacated. However, he has presented no evidence in support of such a claim, and there is nothing in the public record that would establish that Petitioner's conviction at CR-9183-1997 has, in fact, been vacated.

what circumstances a prior conviction for simple possession of a controlled substance can constitute an aggravated felony pursuant to 8 U.S.C. § 1229b(a)(3). Specifically, the Supreme Court determined whether the statutory enhancements for recidivism in regard to simple possession under 21 U.S.C. § 844 can render a prior conviction a conviction for an aggravated felony, where recidivism is demonstrated by the record but was not actually alleged or raised in the prior proceeding.

Petitioner was not convicted under Section 1229b in the present case. More importantly, though, his convictions for delivery of crack cocaine at Counts Five and Six at CR-1140-1991 were used as the predicate offense, not his convictions for simple possession at Counts One and Two. Indeed, Counts One and Two merged for sentencing purposes with Petitioner's drug trafficking convictions. His offenses at Counts Five and Six were punishable by a term of imprisonment of more than one year regardless of any recidivist provisions, and, in fact, Petitioner was sentenced to a term of imprisonment of 24 months to 5 years at each of those Counts. Accordingly, the issue in Carachuri-Rosendo, the use of recidivist provisions to render a simple possession of narcotics conviction a felony for purposes of Section 1229b, is not present here.

Second, even if it were relevant, Carachuri-Rosendo has not been made retroactive to cases on collateral review. The decision itself does not indicate that it has been made retroactive, nor did the Fourth Circuit address the issue in United States v. Simmons, 649 F.3d 237 (4th Cir. 2011), the decision upon which Petitioner relies. Indeed, the Court in Bogardus v. United States provides an exhaustive list of courts that have held that Carachuri-Rosendo is not retroactive, and this Court agrees with those courts. See 2012 WL 292870 (S.D. Ga. Jan. 4, 2012) at *6 (collecting cases).

Therefore, Petitioner cannot establish that he would be unfairly prejudiced by enforcement of the waiver. Moreover, the record demonstrates that the Government would be prejudiced if the Court were to vacate Petitioner's sentence and allow him to proceed to trial in lieu of entering into a plea agreement waiving his right to raise a collateral attack as to any sentence imposed pursuant to the career offender guidelines, as this case is now several years old. Moreover, Petitioner would lose the beneficial sentencing considerations in his plea agreement were he to be permitted to withdraw his plea and proceed to trial. Finally, Petitioner acquiesced in any error. As noted above, he represented to the Court that he understood that he was waiving certain rights in exchange for the

sentencing consideration contained in the plea agreement. He only now challenges the validity of the waivers, well after the fact.

In sum, no miscarriage of justice will occur if the waiver is enforced. The Court's independent review of the record reveals nothing to the contrary. The Court further notes that the Third Circuit has already enforced the appellate waiver contained in the same plea agreement.

## III.    Conclusion

Accordingly, Petitioner's motion is dismissed. Moreover, because Petitioner waived his right to file any such motion, this Court does not reach the merits of Petitioner's claims, and there would be no basis for issuing a certificate of appealability, as Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

s/Alan N. Bloch
United States District Judge

ecf:    Counsel of record

cc:     Walter Vance Harris
        #31371-068
        FCI McKean
        P.O. Box 8000
        Bradford, PA  16701